## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Secretary of Labor,
Mine Safety and Health Administration,
Petitioner

v.

KC Transport, Inc. and
Federal Mine Safety and Health Review Commission,
Respondents

On Petition for Review of a Decision of the
Federal Mine Safety and Health Review Commission

Supplemental Brief for the Secretary of Labor

SEEMA NANDA
Solicitor of Labor

APRIL E. NELSON
Associate Solicitor

EMILY TOLER SCOTT
Counsel for Appellate Litigation

SUSANNAH M. MALTZ
Attorney
U.S. Department of Labor
Office of the Solicitor
Division of Mine Safety & Health
201 12th St. South, Ste. 401
Arlington, VA 20222
(202) 693-5393
(202) 693-9392 (fax)

# Table of Contents

Table of Contents ..................................................................................... ii

Table of Authorities ............................................................................... iii

Glossary ............................................................................................... viii

Summary of Argument ............................................................................ 1

Argument ................................................................................................ 2

   1.    Interpretations of section 2(b) of the Metal Act ......................... 2

      1.1.    Statutory history and context ................................................ 2

      1.2.    Agency interpretation of section 2(b) of the Metal Act ........ 7

      1.3.    The Commission's interpretation of section 2(b) of the
      Metal Act ................................................................................... 9

      1.4.    Courts' interpretations of section 2(b) of the Metal Act ........ 1010

   2.    The Secretary did not waive deference ..................................... 11

   3.    There is no locational requirement in section 3(h)(1)(C) of the
   Mine Act. ......................................................................................... 13

      3.1.    The plain language of the statute does not contain a
      locational requirement, and imposing one would lead to safety-and-
      health-defeating results. ............................................................. 13

      3.2.    Location can be relevant to whether a subsection (C) item is
      "used in" mining, but there is no locational limit in the statute. .......... 16

Certificate of Compliance with Type-Volume Limit, Typeface
Requirements, and Type-Style Requirements ......................................... a

Certificate of Service ................................................................................ b

Addendum – Pertinent Statutes and Regulations ................................... c

# Table of Authorities

**Cases**

*Bush & Burchett, Inc.* v. *Reich*,
  117 F.3d 932 (6th Cir. 1997) ……………………...……………………………… 18

*Chaneyfield* v. *City of New York*,
  525 F.2d 1333 (2d Cir. 1975) ………………………………………………...… 10

*Cyprus Indus. Minerals Co.* v. *FMSHRC*,
  664 F.2d 1116 (9th Cir. 1981) ………………………………………………… 19

*Durst* v. *U.S.*,
  434 U.S. 542 (1978) …………………………………………………………... 12

*Gross* v. *FBL Fin. Servs., Inc.*,
  557 U.S. 167 (2009) …………………………………………………………… 7

*Herman* v. *Associated Elec. Coop., Inc.*,
  172 F.3d 1078 (8th Cir. 1999) ………………………………………………… 18

*Huron* v. *Cobert*,
  809 F.3d 1274 (D.C. Cir. 2016) …………………………….…………………... 12

*Lancashire Coal Co.* v. *Sec'y of Lab.*,
  968 F.2d 388 (3d Cir. 1992) ………………………….……………....... 16, 17, 19

*Marshall* v. *Stoudt's Ferry Preparation Plant*,
  602 F.2d 589 (3d Cir. 1979) …………………………………………………... 19

*Pa. Elec. Co.* v. *FMSHRC*,
  969 F.2d 1501 (3d Cir. 1992) ………………………………………………… 19

*Sec'y of Lab.* v. *Cranesville Aggregate Co.*,
    878 F.3d 25 (2d Cir. 2017) ……………………………..….…..…….…… 18

*Sec'y of Lab.* v. *Nat'l Cement Co. of Cal.*,
    573 F.3d 788 (D.C. Cir. 2009) ……………………………….……… 18

*Shamokin Filler Co., Inc.* v. *FMSHRC*,
    772 F.3d 330 (3d Cir. 2014) …………………………….…….……... 18

*United Energy Servs., Inc.* v. *Fed. Mine Safety & Health Admin.*,
    35 F.3d 971 (4th Cir. 1994) …………………………………………… 18

**Federal Mine Safety and Health Review Commission Decisions**

*Air Prods. & Chems., Inc.*,
    15 FMSHRC 2428 (Dec. 1993),
    *aff'd*, 37 F.3d 1485 (3d Cir. 1994) ……………………………….. 20

*Austin Powder*,
    37 FMSHRC 1337 (June 2015) (ALJ) ……………………………… 19

*Bonanza Materials Inc.*,
    15 FMSHRC 1355 (July 1993) (ALJ) ……………………………… 20

*Calmat Co. of Ariz.*,
    27 FMSHRC 617 (Sept. 2005) ……………………………………… 19

*Carolina Stalite Co.*,
    4 FMSHRC 423 (Mar. 1982)
    *rev'd*, 734 F.2d 1547 (D.C. Cir. 1984) …………………………….….... 9

*James Fork Mining Co.*,
    19 FMSHRC 746 (Apr. 1997) (ALJ) ………………………....……... 20

*Jim Walter Res., Inc.*,
22 FMSHRC 21 (Jan. 2000) …………………………………………….... 20

*Justis Supply & Machine Shop*,
22 FMSHRC 1292 (Nov. 2000) ………………………………………… 19

*Lancashire Coal Co.,*
13 FMSHRC 875, 882-883 (June 1991),
*rev'd*, 968 F.2d 388 (3d Cir. 1992) ……………………………………… 5, 10

*Nat' Cement Co. of Calif.*,
27 FMSHRC 721 (Nov. 2005),
*vacated and remanded*, 494 F.3d 1066 (D.C. Cir. 2007) ………………………… 10

*Oliver M. Elam, Jr., Co.*,
4 FMSHRC 5 (Jan. 1982) …………………………………………… 20

*R.C. Enters.*,
1995 WL 20256 (FMSHRC ALJ Jan. 17, 1995) ……………………… 20

*Rio Algom Mining Corp.*,
23 FMSHRC 1041 (Sept. 2001) (ALJ) ……………………………….. 19

*State of Alaska, Dept of Trans.*
36 FMSHRC 2642 (Oct. 2014) ………………………………………… 15

*Three Star Drilling & Prod. Corp.*,
11 FMSHRC 474 (Mar. 1989) (ALJ) ……………………………… 20

*Titan Constructors, Inc.*,
34 FMSHRC 403 (Feb. 2012) (ALJ) …………………………………….. 19

*Triple B. Corp.*,
10 FMSHRC 389 (March 1988) (ALJ) ……………………………….. 20

*U.S. Steel Mining Co, Inc.*,
  10 FMSHRC 146 (Feb. 1988) …………………………………………… 20

*W.J. Bokus Industries*,
  16 FMSHRC 704 (Apr. 1994) …………………………………………... 15, 20

## Statutes

Act of May 16, 1910, Pub. L. No. 61-179, 36 Stat. 369 (1910) …………………... 2, 3

Federal Metal and Nonmetallic Mine Safety Act, Pub. L. No. 89-577, 80 Stat. 772 (1966) (repealed 1977)
  30 U.S.C. 721(b) (1976) …………..……………..……... 1, 2, 4, 5, 6, 7, 8, 9, 10, 11
  30 U.S.C. 721(d) (1976) ………………………………………………….. 4
  30 U.S.C. 725 (1976) …………………………………………………….. 3
  30 U.S.C. 727 (1976) …………………………………………………….. 4
  30 U.S.C. 728 (1976) …………………………………………………….. 4
  30 U.S.C. 730 (1976) …………………………………………………….. 4
Federal Mine Safety and Health Act of 1977
  30 U.S.C. 801 …………………………………………………………….. 4
  30 U.S.C. 802(a) ………………………………………………………….. 5
  30 U.S.C. 802(h)(1)(C)………………………… 2, 6, 7, 11, 13, 14, 15, 16, 17, 21
  30 U.S.C. 802(n) ………………...……………………………………….. 5
  30 U.S.C. 823(a) ………………………………………………………….. 5

## Legislative Reports

H.R. Rep. No. 95-312 (1977) ……………………………………………… 7

S. Rep. No. 95-181 (1977) …………………………………………….. 4, 5

**Memoranda of Understanding**

MESA-OSHA Mem. of Understanding,

39 Fed. Reg. 27,382, (July 26, 1974) ................................................. 8

MSHA-OSHA Mem. of Understanding,

44 Fed. Reg. 22,827 (Apr. 17, 1979) ..........................................…... 9, 17

**Miscellaneous**

J. Davitt McAteer,
   *The Federal Mine Safety and Health Act of 1977:*
   *Preserving a Law That Works*, 98 W. Va. L. Rev. 1105 (1996) ....................... 3

Antonin Scalia & Bryan A. Garner,
   *Reading Law: The Interpretation of Legal Texts* (1st ed. 2012) ...................... 14

# Glossary

| | |
|---|---|
| Coal Act | Federal Coal Mine Health and Safety Act of 1969 |
| Commission | Federal Mine Safety and Health Review Commission |
| Metal Act | Federal Metal and Nonmetallic Mine Safety Act of 1966 |
| Metal Review Board | Federal Metal and Nonmetallic Mine Safety Board of Review |
| MESA | Mining Enforcement and Safety Administration |
| Mine Act | Federal Mine Safety and Health Act of 1977 |
| MOU | Memorandum of Understanding |
| MSHA | Mine Safety and Health Administration |
| OSHA | Occupational Safety and Health Administration |

## Summary of Argument

First, the Court calls on the Secretary to explain how the Secretary, the Commission, and courts have interpreted the definition of "mine" in section 2(b) of the Federal Metal and Nonmetallic Mine Safety Act, Pub. L. No. 89-577, 80 Stat. 772 (1966) (Metal Act) (repealed 1977).

A short statutory history and context are essential to addressing the Court's questions. The Metal Act was short-lived and its definition of "mine" went largely unanalyzed. The Federal Metal and Nonmetallic Mine Safety Board of Review (Metal Review Board), the then-existing analog to the Commission, never heard an appeal, and Commission decisions referencing the Metal Act's definition of a "mine" do not analyze it in any depth. Likewise, the sole available judicial decision that mentions section 2(b) of the Metal Act does not substantively discuss the definition.

MSHA did not exist when the Metal Act was in effect, and the Department of the Interior (not Labor) had authority to enforce it, so the Secretary did not interpret the Metal Act's definition of "mine." But MSHA's predecessor agency, the Mining Enforcement and Safety Administration (MESA), did. MESA interpreted the definition in the same way the Secretary currently interprets the Mine Act: covered items that are "used in" extraction or milling did not have to be

located on or adjacent to extraction and milling sites for MESA to have jurisdiction. And a comparison of the Metal Act's and Mine Act's definitions of "mine" reveals that Congress intended a functional test, not a locational one, for determining whether a subsection (C) item is a "mine."

Second, the Court's supplemental briefing order asks whether, at argument, the Secretary waived his argument that he is entitled to *Chevron* deference. The Secretary did not. The argument emphasized the Secretary's primary argument (that the statute is unambiguous on this point, so that the Court does not need to defer to the Secretary's interpretation) and did not waive the Secretary's secondary argument (that if the Court concludes the statute is ambiguous, the Secretary's interpretation merits *Chevron* deference).

The Court's supplemental briefing order also asks the parties to address whether there is any locational limit based on the places in subsection (C), without reference to the places enumerated in subsections (A) and (B). There is no such locational limit in subsection (C).

## Argument

## 1. Interpretations of section 2(b) of the Metal Act

### 1.1. Statutory history and context

Congress established federal involvement in mine safety and health beginning in 1910 when it created the Bureau of Mines in the Department of the Interior. Act of

May 16, 1910, Pub. L. No. 61-179, 36 Stat. 369 (1910). Over the next century,

reacting to a series of mining disasters that killed more than a hundred thousand

miners and demonstrated the ineffectiveness of existing law, Congress passed

progressively more protective legislation that finally led to passage of the

comprehensive, effective statute in force today: the Federal Mine Safety and

Health Act of 1977. J. Davitt McAteer, *The Federal Mine Safety and Health Act of

1977: Preserving a Law That Works*, 98 W. Va. L. Rev. 1105, 1111 (1996) (reviewing

major disasters and subsequent mine safety and health legislation and noting that

"[e]ach statute, culminating in the Mine Act, attempted to address the

shortcomings of prior legislation").

The Metal Act was one in that series of interim mine safety and health laws. It

was in force for eleven years and established mostly voluntary safety and health

standards for metal and non-metal (rather than coal) mining operations. 30

U.S.C. 725 (1976). The Metal Act defined the term "mine" as

> (1) an area of land from which minerals other than coal or lignite are
> extracted in nonliquid form or, if in liquid form, are extracted with
> workers underground, (2) private ways and roads appurtenant to such
> area, and (3) land, excavations, underground passageways, and
> workings, structures, facilities, equipment, machines, tools, or other
> property, on the surface or underground, used in the work of
> extracting such minerals other than coal or lignite from their natural

deposits in nonliquid form, or if in liquid form, with workers underground, or used in the milling of such minerals . . . .

30 U.S.C. 721(b) (1976).

At the time, the Department of the Interior was responsible for federal oversight of the mining industry. The Secretary of the Interior and, by 1973, an agency within the Department of the Interior, MESA, were tasked with enforcement of the Metal Act. Sec'y Order No. 2953 (May 7, 1973); 30 U.S.C. 721(d) (1976); S. Rep. No. 95-181, at 5 (1977) (discussing creation and role of MESA). Enforcement was limited and ineffective, S. Rep. No. 95-181, at 6, 8, but representatives of the Secretary of the Interior could in limited circumstances issue orders requiring withdrawal from or closure of the mine. 30 U.S.C. 727-728 (1976). Those orders could be appealed to the Secretary of the Interior, and a final ruling by the Secretary could be appealed to an adjudicative body established by the Metal Act: the Federal Metal and Nonmetallic Mine Safety Board of Review. 30 U.S.C. 730 (1976). The Metal Review Board never received a single appeal and Congress disbanded it in 1975. S. Rep. No. 95-181, at 5. The Senate Report accompanying the passage of the Mine Act cited this as "[p]erhaps indicative of the ineffectiveness of the Metal Act." *Id.* at 6.

In 1977, Congress repealed the Metal Act and amended the Federal Coal Mine Health and Safety Act of 1969 to create the Federal Mine Safety and Health Act. 30

U.S.C. 801 et seq. The Mine Act transferred responsibility for mine safety and health regulation and enforcement to the Secretary of Labor. 30 U.S.C. 802(a). And it created a new enforcement agency, MSHA, and a new adjudicative agency, the Federal Mine Safety and Health Review Commission. 30 U.S.C. 802(n), 823(a).

Congress incorporated aspects of the Coal Act and the Metal Act into the Mine Act. One benefit of the Mine Act was the creation of "one statute for both coal and metal/nonmetal mines, affording equal protection for all miners and a common regulatory program for all operators." S. Rep. No. 95-181, at 9. But marrying the Coal and Metal Acts was not the main purpose of the Mine Act; the main purpose was to improve on past legislation to create a more impactful and protective regulatory and enforcement regime. See, *e.g.*, *id.* at 8 (discussing the ineffective protection afforded by the Metal Act). Congress explicitly rejected certain parts of the Metal Act and added additional protections that prior legislation did not afford. See, *e.g.*, *id.* at 26-27 (rejecting the provision of the Metal Act that permitted advanced notice of inspections).

It is, however, clear that Congress used the definition of "mine" in section 2(b) of the Metal Act in writing section 3(h)(1) of the Mine Act. See, *e.g., Lancashire Coal Co.,* 13 FMSHRC 875, 882-883 (June 1991) (noting that the Mine Act's

definition is derived from the Metal Act), *rev'd on other grounds*, 968 F.2d 388 (3d Cir. 1992). But not only did Congress "enlarge[] the definition of 'mine' in section 3(h) to include those mines previously covered by" the Metal Act, as the Court's supplemental briefing order notes, Congress further expanded on the language in the Metal Act in several places:

| Metal Act section 2(b)(3) | Mine Act section 3(h)(1)(C) |
|---|---|
| land, excavations, underground passageways, and workings, structures, facilities, equipment, machines, tools, or other property, on the surface or underground, used in the work of extracting such minerals from their natural deposits in nonliquid form, or if in liquid form, with workers underground, or used in, the milling of such minerals. | land**s**, excavations, underground passageways, **shafts, slopes, tunnels** and workings, structures, facilities, equipment, machines, tools, or other property **including impoundments, retention dams, and tailings ponds**, on the surface or underground, used in, **or to be used in, or resulting from**, the work of extracting such minerals from their natural deposits in nonliquid form, or if in liquid form, with workers underground, or used in, **or to be used in**, the milling of such minerals, **or the work of preparing coal or other minerals, and includes custom coal preparation facilities.** |

The bolded text in the Mine Act column indicates where Congress made additions to the Metal Act's definition.

Comparing the Metal Act and Mine Act definitions reveals an additional emphasis on items' *use*. The House version of the bill that became the Mine Act did not contain the "to be used in" language, H.R. Rep. No. 95-312, at 28 (1977), but Congress ultimately included it. 30 U.S.C. 802(h)(1)(C). The addition of the "to be used in" language suggests that Congress approved of a functional test for defining what fell within the definition of a "mine" ("used in") and deliberately expanded it. Notably, Congress did not add any language about subsection (C) items' location, though this 1977 revision of the Metal Act's predecessor definition provided an opportunity to do so. "When Congress amends one statutory provision but not another, it is presumed to have acted intentionally." *Gross* v. *FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009).

In sum, the Mine Act's definition of "mine" is broader than the Metal Act's. But that does not mean the Mine Act contains no limiting principle; there are limits to Mine Act jurisdiction. See Section 3, *infra*.

## 1.2.  Agency interpretation of section 2(b) of the Metal Act

The Court inquired as to how the Secretary, the Commission, and the courts have interpreted the Metal Act's "mine" definition. The Secretary of Labor was not responsible for Metal Act enforcement and MSHA did not yet exist when the Metal Act was in force, so the Secretary did not interpret section 2(b)(3) during the

lifetime of the Metal Act. But a 1974 memorandum of understanding between the Departments of the Interior (MESA) and Labor (OSHA) clarifies "the authority of each agency regarding areas of employee safety and health" and MESA's interpretation of "mine":

> Section 2(b) of the Metal Act defines "mines" covered by the Act to include not only mineral extraction (mining) operations, but also milling and preparation facilities and other surface facilities used in mining or milling. MESA interprets its authority to include the prescription and enforcement of standards regarding occupational safety and health conditions of miners who work at loading, dumping or preparation facilities *remote from the mine area but used in the milling or preparation of extracted materials.*
>
> MESA also interprets its authority to include working conditions of such operations, including such other surface facilities as may be *used in extraction or preparation of extracted minerals*. Such other surface facilities may include: electrical or mechanical shop, power plant, acid plant, chemical laboratory, warehouse, lumber preparation, treating plant, paint shop, general office heating plant, loading docks, and transportation.

MESA-OSHA Mem. Of Understanding, 39 Fed. Reg. 27,382, 27,383 (July 26, 1974) (emphasis added). This interpretation—that it is function, not location, that determines whether a facility should be considered a "mine" under the Metal Act—mirrors the Secretary of Labor's interpretation of "mine" under the Mine Act. See JA 212-229.

A later memorandum of understanding between MSHA and OSHA that intended to "delineate certain areas of authority" underscores this point. MSHA-OSHA Mem. of Understanding, 44 Fed. Reg. 22,827, 22,827 (Apr. 17, 1979). It provides that "the Mine Act gives MSHA jurisdiction over lands, facilities, equipment, and other property used in, to be used in, or resulting from mineral extraction or used in or to be used in mineral milling." *Id.* at 22,828. It also exempts some items from the general coverage of section 3(h)(1)(A), which covers lands used in mining and items on those lands, indicating that OSHA has jurisdiction over ceramic plants, fertilizer product operations, and smelters, inter alia, whether or not they are located "on mine property." *Id.* at 22,828. This affirms that the items' functions, not their location, determine whether they fall within the definition of a "mine."

### 1.3. The Commission's interpretation of section 2(b) of the Metal Act

The Federal Mine Safety and Health Review Commission did not exist contemporaneously with the Metal Act, and the analogous body, the Metal Review Board, never heard an appeal. As a result, neither adjudicatory agency interpreted the Metal Act's definition of mine in a Metal Act case.

A few Commission cases reference the Metal Act:

- *Carolina Stalite Co.*, 4 FMSHRC 423, 424 n.4 (Mar. 1982) (looking to the Metal Act in interpreting Mine Act coverage of extraction, milling, and

9

preparation of minerals, and concluding that MSHA lacked jurisdiction over a gravel processing facility), *rev'd*, 734 F.2d 1547 (D.C. Cir. 1984).

- *Nat' Cement Co. of Calif.*, 27 FMSHRC 721, 734 n.15 (Nov. 2005) (referring to the Metal Act section 2(b)(2)'s language concerning roads and ways, and noting that the Mine Act's definition was "much along the lines of" the Metal Act definition, but ultimately unhelpful in resolving the question of jurisdiction over semi-private roads), *vacated and remanded*, 494 F.3d 1066 (D.C. Cir. 2007).

- *Lancashire Coal Co.*, 13 FMSHRC at 882-883 (noting that Congress added "to be used in" and "resulting from" to the Metal Act-derived language, but did not add "resulting from" to the language related to coal preparation), *rev'd on other grounds*, 968 F.2d 388 (3d Cir. 1992).

None of these cases involves in-depth analysis of the Metal Act; the Commission has not used the Metal Act to illuminate the contours of Mine Act jurisdiction.

### 1.4. Courts' interpretations of section 2(b) of the Metal Act

The Secretary could locate only one case that even quasi-substantively references the Metal Act's definition of "mine." *Chaneyfield* v. *City of New York* addressed whether the Metal Act provided a private right of action for injured workers. 525 F.2d 1333 (2d Cir. 1975). *Chaneyfield* concerned an engineer who was injured while working on a tunnel construction project. The engineer argued that the tunnel project constituted a mine under the Metal Act and that his employer was liable for injuries he sustained due to "unsafe mine conditions." *Id.* at 1335. The Second Circuit determined that the Metal Act did not provide a private right of action for

injured employees, so the court did not need to reach "the rather troublesome question, somewhat lightly discussed by the court below, whether the operation… was indeed a 'mine' under the broad definition of that term in [the Metal Act]." *Id.* at 1335-1336. In declining to reach the issue, the Second Circuit quoted only section 2(b)(1) of the Metal Act (referring to areas of land from which minerals are extracted), not section 2(b)(3). *Id.* at 1336 n.3. The Secretary could not locate the district court decision that apparently "lightly discussed" this interpretive question.[1]

## 2. The Secretary did not waive deference.

The Secretary did not waive an argument that *Chevron* deference applies to this case during oral argument. In the principal and reply briefs, the Secretary argued primarily that the Mine Act plainly does not require subsection (C) mines to be

---

[1] The case was not available in the digital databases, including digitized reporters, available to the Secretary. On January 4, 2023, Counsel for the Secretary contacted Westlaw in search of the below decision, issued in the U.S. District Court for the Southern District of New York. Westlaw advised Counsel that that case had not been digitized and was not available through its platform. Counsel contacted the SDNY Records Management Office. The Office informed Counsel that civil records, including decisions, are sometimes destroyed after a period of time, but invited Counsel to send a request by mail for the decision to the Office's Manhattan location to request that staff there attempt to locate a microfiche or microfilm reproduction of the decision. On January 5, 2023, Counsel mailed a request for a copy of the decision, informing the Office of the deadline in this Court's order. As of the date of filing, Counsel has not heard back from the SDNY Records Management Office.

located on subsection (A) extraction areas for MSHA to have jurisdiction over them, and secondarily, that if the statute is ambiguous on that point, his interpretation is owed *Chevron* deference. JA 212-233, 337. At oral argument, KC Transport dedicated a significant portion of its argument to contending that the Secretary was not entitled to deference. Counsel for the Secretary responded that the Secretary was not relying on *Chevron* deference and that the meaning of the statute is plain. This statement merely emphasized the Secretary's primary argument and did not waive the secondary one.

Arguments raised in the briefs can be abandoned at oral argument, but that usually happens expressly. See, *e.g.*, *Durst* v. *U.S.*, 434 U.S. 542, 550 (1978) ("In their brief, petitioners argued that restitution is *not* a permissible condition of probation…. During oral argument, petitioners expressly abandoned this argument, conceding that restitution is a permissible condition of probation because it is directly authorized by [statute]."). In *Huron* v. *Cobert*, this Court determined that an appellant waived traditional standing arguments by not including them in the briefs and expressly abandoned them during oral argument in this exchange:

> Q.   You're not asserting non-procedural traditional Article III injury anymore?
> A.   That's correct, Your Honor.
> Q.   You've completely abandoned that as the theory for jurisdiction?

A.     I believe that we have. Yes, Your Honor.

809 F.3d 1274, 1279-1280 (D.C. Cir. 2016).

Unlike in these cases, the Secretary did not abandon the deference argument and continues to stand by the arguments in his briefs.

## 3.  There is no locational requirement in section 3(h)(1)(C) of the Mine Act.

The Mine Act has no locational limit based on the places in subsection (C), without reference to the places enumerated in subsections (A) and (B). That interpretation is compelled by the text of subsection (C) and the purpose-defeating practical results of interpreting the statute to include a locational requirement. But although subsection (C) has no locational *requirement*, location can be *relevant* to determining whether an item listed in the statute is a "mine."

### 3.1.  The plain language of the statute does not contain a locational requirement, and imposing one would lead to safety-and-health-defeating results.

Subsection (C) defines a "mine" as including a list of items—including those with effectively fixed locations (such as "lands," "excavations," "underground passageways," "shafts," "slopes," "tunnels," and "dams") as well as movable objects (such as "equipment," "machines," and "tools")—that are, among other things, "used in" extraction, preparation or milling. The statute makes no distinction between any item in the list and includes no language requiring any of

the movable items to be located on, in, or at any of the others. Instead, the statute presents a non-hierarchical list, with each item at an equal grammatic rank.

Interpreting subsection (C) as requiring some items to be located on others would also violate the rule against surplusage. Giving MSHA jurisdiction over the items with more-or-less fixed locations (lands, excavations, shafts, tunnels, impoundments, dams, and the like) already gives MSHA jurisdiction over movable items (tools, equipment, etc.) on those fixed-location items; there is no point in giving MSHA jurisdiction over a tunnel if MSHA does not also have jurisdiction over the tools miners use to work in the tunnel or the equipment that keeps the tunnel from collapsing.

If Congress meant to include movable items only when they were on fixed-location items, then there would have been no need to include movable items separately. But Congress *did* include them separately, and the Court should give effect to what Congress said. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (1st ed. 2012) ("[E]very word is to be given effect…. None should needlessly be given an interpretation that causes it to… have no consequence.")

There is no case law suggesting that any item in subsection (C) must be located on another item in subsection (C). In fact, Commission case law conveys the

opposite. In *W.J. Bokus Industries*, for example, the Commission determined that MSHA had jurisdiction over gas cylinders, a grinder, and a stove fan, without reaching the question of whether the garage where they were located was itself a facility used in mining and thus, a mine under subsection (C). 16 FMSHRC 704, 708 (Apr. 1994). The Commission analyzed the cylinders, grinders, and fan under subsection (C); that was sufficient to determine Mine Act jurisdiction. *Ibid.*

Likewise, in *State of Alaska, Department of Transportation*, MSHA sought to exercise jurisdiction over a piece of portable equipment (a SAG screener, used to separate rocks of various sizes) on a public road. 36 FMSHRC 2642, 2643 (Oct. 2014). The Commission reversed the ALJ's determination that the sorter did not fall within the definition of a "mine" and determined that MSHA had jurisdiction over the screener. 36 FMSHRC at 2639.

Limiting Mine Act jurisdiction to moveable subsection (C) items on fixed subsection (C) items creates the same practical concerns that limiting Mine Act jurisdiction to subsection (C) items on subsection (A) lands and subsection (B) roads does. A coal haulage truck could simply drive out of the subsection (C) facility in the same manner that it could drive off subsection (A) land to avoid MSHA enforcement. See JA 227-228. The dissenting Commissioner recognized the illogical and safety-and-health-defeating outcomes this kind of interpretation

would impose on MSHA. See JA 177 (Comm'r Traynor, dissenting). But, though subsection (C) does not contain a locational requirement, location can be relevant to determining whether a subsection(C) item is "used in" extraction, milling, or preparation. See Section 3.2, 3.3, *infra*, p. 16-22.

### 3.2. Location can be relevant to whether a subsection (C) item is "used in" mining, but there is no locational limit in the statute.

In asking the parties to address whether there is a locational limit in subsection (C), the Court cites *Lancashire Coal*, a Third Circuit decision analyzing whether a structure that "resulted from" the preparation of coal was a mine under subsection (C). In that case, a worker was killed while dismantling a coal silo in an abandoned coal preparation plant. *Lancashire Coal Co.* v. *Sec'y of Lab.*, 968 F.2d 388, 389-393 (3d Cir. 1992).

It is not immediately clear to the Secretary what relevance *Lancashire Coal* has to the question posed in the Court's order (whether there is a locational limit within subsection (C)). *Lancashire Coal* concerns reclamation work, which necessarily takes place *on* the *former* extraction, milling, or preparation site. Thus, location is not a principal concern of *Lancashire Coal* or of jurisdictional inquiries concerning reclamation work. Location can be relevant to whether an item currently is used in extraction, milling, or preparation work, and the Secretary does consider it. JA 225, 331-335, although it is not dispositive or required.

This Court's order cites a footnote in *Lancashire* referencing a memorandum that contained a list of factors the Secretary considered, at the time, in assessing Mine Act jurisdiction over reclamation work at abandoned mine sites. *Lancashire Coal Co.*, 968 F.2d at 393 n.5. The Third Circuit referenced this memo—which was, in any event, not binding on the Secretary—not to apply the factors to Lancashire's reclamation work, but to call attention to inconsistency in the Secretary's interpretation. *Ibid.*

There is not an analogous list of factors that the Secretary uses to determine whether a particular subsection (C) item is used in extraction, preparation, or milling, but the ways in which the Secretary has enforced this section is instructive. The MSHA-OSHA MOU describes mining as "entail[ing] such work as directed to the severance of minerals from the natural deposits by methods of underground excavations, opencast work, quarrying, hydraulicking and alluvial dredging" and notes that "[m]inerals so excavated usually require upgrading processes," which are commonly called "milling." 44 Fed. Reg. 22,829. It also lists some "mining operations and minerals" and "general definitions of milling processes...." *Id.* at 22,829-22,830. Subsection (C) items that fall into these categories are generally subject to MSHA jurisdiction, but to make that determination in particular cases, the Secretary applies the plain meaning of the

statute, the MOU, and the relevant case law, including the below cases.[2] Some of

these cases address location as a factor in the analysis.

- *Sec'y of Lab.* v. *Cranesville Aggregate Co.*, 878 F.3d 25 (2d Cir. 2017) (determining OSHA and MSHA had split jurisdiction over an aggregates company; the Secretary's determination that OSHA had jurisdiction over the company's sand and gravel operations was reasonable and entitled to deference)

- *Shamokin Filler Co., Inc.* v. *FMSHRC*, 772 F.3d 330 (3d Cir. 2014) (MSHA had jurisdiction over a coal-handling facility)

- *Sec'y of Lab.* v. *Nat'l Cement Co. of Cal.*, 573 F.3d 788 (D.C. Cir. 2009) (MSHA had jurisdiction over vehicles used in mining on a mixed-use, semi-private road)

- *Herman* v. *Associated Elec. Coop., Inc.*, 172 F.3d 1078 (8th Cir. 1999) (MSHA did not have jurisdiction over coal-processing operations at electric power plant) (considering location as part of the analysis)

- *Bush & Burchett, Inc.* v. *Reich*, 117 F.3d 932 (6th Cir. 1997) (an operator raised MSHA jurisdiction as a defense to citations issued by OSHA; MSHA did not have jurisdiction over public roads and had not asserted jurisdiction over the roads in this case)

- *United Energy Servs., Inc.* v. *Fed. Mine Safety & Health Admin.*, 35 F.3d 971 (4th Cir. 1994) (MSHA had jurisdiction over conveyor belt system that transported coal waste to an electric power plant) (considering location as part of the analysis)

---

[2] The Secretary applies *Maxxim Rebuild Co., LLC* v. *FMSHRC* to jurisdictional conflicts arising in the Sixth Circuit. 848 F.3d 737 (6th Cir. 2017) (MSHA did not have jurisdiction over an off-site facility). The Secretary disagrees with *Maxxim* because it requires a locational element. See Sec'y Br., JA 219-220.

- *Pa. Elec. Co.* v. *FMSHRC*, 969 F.2d 1501 (3d Cir. 1992) (MSHA had jurisdiction over conveyor head drives at power plant) (considering location as part of the analysis)

- *Lancashire Coal Co.* v. *Sec'y of Lab.*, 968 F.2d 388 (3d Cir. 1992) (MSHA did not have jurisdiction over demolition of a structure "resulting from" coal preparation during reclamation work at an abandoned mine)

- *Cyprus Indus. Minerals Co.* v. *FMSHRC,* 664 F.2d 1116 (9th Cir. 1981) (MSHA had jurisdiction over explorations for talc deposits)

- *Marshall* v. *Stoudt's Ferry Preparation Plant*, 602 F.2d 589 (3d Cir. 1979) (MSHA had jurisdiction over a dredged sand and gravel operation)

**Commission and Commission ALJ cases**

- *Austin Powder*, 37 FMSHRC 1337 (June 2015) (ALJ) (MSHA had jurisdiction over an off-site explosives facility) (considering location as part of the analysis)

- *Titan Constructors, Inc.*, 34 FMSHRC 403 (Feb. 2012) (ALJ) (MSHA had jurisdiction over a shop and tools used in mining operation) (considering location as part of the analysis)

- *Calmat Co. of Ariz.*, 27 FMSHRC 617 (Sept. 2005) (MSHA had jurisdiction over haul trucks used in mining and located on a haul road at a facility where OSHA and MSHA split jurisdiction) (considering location as part of the analysis)

- *Rio Algom Mining Corp.*, 23 FMSHRC 1041 (Sept. 2001) (ALJ) (MSHA did not have jurisdiction over in-situ extraction without miners underground)

- *Justis Supply & Machine Shop*, 22 FMSHRC 1292 (Nov. 2000) (MSHA had jurisdiction over an off-site dragline assembly site)

- *Jim Walter Res., Inc.*, 22 FMSHRC 21 (Jan. 2000) (MSHA had jurisdiction over an off-site facility for equipment used at coal extraction sites) (considering location as part of the analysis)

- *W.J. Bokus Indus., Inc.*, 16 FMSHRC 704 (Apr. 1994) (MSHA had jurisdiction over off-site gas cylinders, a grinder, and a stove fan)

- *Air Prods. & Chems., Inc.*, 15 FMSHRC 2428 (Dec. 1993), *aff'd*, 37 F.3d 1485 (3d Cir. 1994) (table) (MSHA had jurisdiction over coal-handling portions of electric power plant)

- *James Fork Mining Co.*, 19 FMSHRC 746 (Apr. 1997) (ALJ) (MSHA had jurisdiction over reclamation work done to prepare a former mine site for future mining)

- *R.C. Enters.*, 1995 WL 20256 (FMSHRC ALJ Jan. 17, 1995) (MSHA had jurisdiction over reclamation work on land "resulting from" the work of extracting coal)

- *Bonanza Materials Inc.*, 15 FMSHRC 1355 (July 1993) (ALJ) (MSHA had jurisdiction over a mechanics' facility) (considering location as part of the analysis)

- *Three Star Drilling & Prod. Corp.*, 11 FMSHRC 474 (Mar. 1989) (ALJ) (MSHA had jurisdiction over an oil recovery operation with workers underground)

- *Triple B. Corp.*, 10 FMSHRC 389 (March 1988) (ALJ) (MSHA had jurisdiction over reclamation work to reclaim land conditions that "resulted from" coal mining)

- *U.S. Steel Mining Co, Inc.*, 10 FMSHRC 146 (Feb. 1988) (MSHA had jurisdiction over a shop used for the repair and maintenance of mine equipment) (considering location as part of the analysis)

- *Oliver M. Elam, Jr., Co.*, 4 FMSHRC 5 (Jan. 1982) (MSHA did not have jurisdiction over a stevedoring operation that stored and loaded coal for transport)

As the Secretary explained in the principal brief, JA 225, determining whether a subsection (C) item is a "mine" is incredibly fact-intensive. The Secretary makes those determinations carefully, in compliance with the law, and—as Congress directed—in the "broadest possible" way to carry out his responsibilities under the Mine Act. And the Secretary takes a subsection (C) item's location into account. For example, a truck's location in a private driveway hundreds of miles from an extraction site (or facility, shaft, or slope) would inform whether it is "used in" mining. The Secretary's point is not that location is irrelevant to determining what constitutes a subsection (C) "mine"—only that a particular location is not required. JA 225.

While the statutory language is indeed broad and there is no locational limit, KC Transport cites no instances of MSHA abusing its authority to inspect subsection (C) items, and the Secretary is aware of no cases addressing the extreme situations the Commission invoked in its decision (MSHA exercising jurisdiction over trucks in diner parking lots, *e.g.*). This case presents no extreme situation and the Court should find that MSHA has jurisdiction over trucks and trucking facilities used in mining even if not located on any other fixed location listed in subsection (C).

Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

APRIL E. NELSON
Associate Solicitor

EMILY TOLER SCOTT
Counsel for Appellate Litigation

s/ SUSANNAH M. MALTZ
Attorney
U.S. Department of Labor
Division of Mine Safety & Health
201 12th Street South, Suite 401
Arlington, VA 22202
(202) 693-5393

Attorneys for the Secretary of Labor

**Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements**

This document complies with the type-volume limit of this Court's December 30, 2022 Order because, excluding the parts of the document exempted under Fed. R. App. P. 32(f), it contains 4962 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Microsoft Word in 14-point Equity.

s/ SUSANNAH M. MALTZ
Attorney
U.S. Department of Labor
Division of Mine Safety & Health
201 12th Street South, Suite 401
Arlington, VA 22202
(202) 693-5393

**Certificate of Service**

I certify that I electronically filed the foregoing with the Clerk of the Court for the

United States Court of Appeals for the District of Columbia Circuit by using the

appellate CM/ECF system on January 13, 2023 and the following registered users

will be served via the CM/ECF system:

T. Jason Riley
Office of General Counsel
Federal Mine Safety and Health Review Commission
1331 Pennsylvania Ave., NW Suite 520N
Washington, DC 20004
jriley@FMSHRC.gov

James P. McHugh
Christopher D. Pence
Hardy Pence PLLC
10 Hale Street, 4th Floor
P.O. Box 2548
Charleston, WV 25329
jmchugh@hardypence.com
cpence@hardypence.com

                                  s/ SUSANNAH M. MALTZ
                                     Attorney
                                     U.S. Department of Labor
                                     Division of Mine Safety & Health
                                     201 12th Street South, Suite 401
                                     Arlington, VA 22202
                                     (202) 693-5393

## Addendum – Pertinent Statutes and Regulations

**Federal Metal and Nonmetallic Mine Safety Act, Pub. L. No. 89-577, 80 Stat. 772 (1966) (repealed 1977)**

30 U.S.C. 721(b) (1976)

(b) The term ″mine″ means (1) an area of land from which minerals other than coal or lignite are extracted in nonliquid form or, if in liquid form, are extracted with workers underground, (2) private ways and roads appurtenant to such area, and (3) land, excavations, underground passageways, and workings, structures, facilities, equipment, machines, tools, or other property, on the surface or underground, used in the work of extracting such minerals other than coal or lignite from their natural deposits in nonliquid form, or if in liquid form, with workers underground, or used in the milling of such minerals, except that with respect to protection against radiation hazards such term shall not include property used in the milling of source material as defined in the Atomic Energy Act of 1954, as amended.


**Federal Mine Safety and Health Act of 1977**

30 U.S.C. 802(h)(1)(C)

For the purpose of this chapter, the term--

"coal or other mine" means (C) lands, excavations, underground passageways, shafts, slopes, tunnels and workings, structures, facilities, equipment, machines, tools, or other property including impoundments, retention dams, and tailings ponds, on the surface or underground, used in, or to be used in, or resulting from, the work of extracting such minerals from their natural deposits in nonliquid form, or if in liquid form, with workers underground, or used in, or to be used in, the milling of such minerals, or the work of preparing coal or other minerals, and includes custom coal preparation facilities. In making a determination of what constitutes mineral milling for purposes of this chapter, the Secretary shall give due consideration to the convenience of administration resulting from the delegation to one Assistant Secretary of all authority with respect to the health and safety of miners employed at one physical establishment;